UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

The Honorable Howard R. Tallman

| | | |
|---|---|---|
| In re: | ) | |
| **CENTRAL CONCRETE PUMPING, INC.** | ) | Case No. 12-17031 |
| EIN: 84-1148469 | ) | Chapter 11 Bankruptcy |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| **SOUTHWEST CONCRETE PUMPING, INC.** | ) | Case No. 12-17034 |
| EIN: 58-2377688 | ) | Chapter 11 Bankruptcy |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| **AJ CONCRETE PUMPING II, INC.** | ) | Case No. 12-17032 |
| EIN: 84-1270413 | ) | Chapter 11 Bankruptcy |
| Debtor. | ) | |
| | ) | **JOINTLY ADMINISTERED UNDER** |
| | ) | **Chapter 11 Case No. 12-17031** |

_____

**WELLS FARGO EQUIPMENT FINANCE, INC.'S OBJECTION TO THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT**
_____

**Wells Fargo Equipment Finance, Inc**. ("Wells Fargo") by and through its attorneys, BROWN, BERARDINI & DUNNING, P.C., objects to the Disclosure Statement for the Plan of Reorganization (the "Disclosure Statement") of Central Concrete Pumping, Inc., Southwest Concrete Pumping, Inc., and AJ Concrete Pumping II, Inc., (the "Debtors"). Unless otherwise indicated, defined terms in this objection shall have the same meaning as in the Disclosure Statement. Wells Fargo objects as follows:

### I.   BACKGROUND

1. Central Concrete and Wells Fargo entered into the following transactions:

    (a) A Promissory Note dated December 2, 2004, ("Note-1") to Wells Fargo in the face amount of $764,000.00. Said Note is secured by a Security Agreement concerning certain Schwing concrete booms, attachments and accessories;

    (b)    A Promissory Note dated December 6, 2004, ("Note -2") to Wells Fargo in the face amount of $1,184,000.00.  Said Note is secured by a Security Agreement concerning certain Schwing concrete booms, attachments and accessories;

    (c)    A Revolving Loan Agreement dated August 31, 2008, ("Note-3"), by assignment by CIT Group/Equipment Financing, in the face amount of $7,500,000.00. Said Note is secured by various collateral, concrete booms, attachments and accessories;

    (d)    A Master Lease Agreement dated April 6, 2005, ("Master Lease");

    (e)    A Supplemental Lease Agreement dated April 6, 2005, ("Lease -1") in the face amount of $700,000.00, concerning certain concrete booms, attachments and accessories;

    (f)    A Supplemental Lease Agreement dated May 26, 2006, ("Lease -2") in the face amount of $573,010.00, concerning certain concrete booms, attachments and accessories; and

    (g)    A Supplemental Lease Agreement dated June 15, 2006, ("Lease-3") in the face amount of $573,010.00, concerning certain concrete booms, attachments and accessories;

    (h)    The seven transactions above will collectively be referred to as the ("Wells Fargo Obligation").

2. The Co-Debtors Southwest Concrete Pumping, Inc., AJ Concrete Pumping II, Inc., Western Concrete Pumping, Inc., SWCP Limited Liability Company, SW Payroll, LLC, S. Robert Rosendale, Jeffrey C. Moll and Peter DeGrood guaranteed the Wells Fargo Obligation.

3. The Debtors and the Guarantors executed Forbearance Agreements with Wells Fargo on September 25, 2009, June 1, 2010, and March 29, 2011.

4. As of the date of the Debtors bankruptcy filing, April 10, 2012, the Debtor owed Wells Fargo $6,264,594.56, plus costs interest and fees.

5. The Debtors filed their Chapter 11 Plan of Reorganization and their Disclosure Statement on October 9, 2012.

6. The Debtors' Plan proposes to treat the Wells Fargo's secured claim as follows:

    (a)    Wells Fargo shall have a secured claim in an amount equal to $2,820,673.00 less an amount equal to all Adequate Protection Payments made by the Debtors to Wells Fargo as of the Effective Date applicable to the Wells Fargo Equipment Collateral, which are estimated to be $64,255.00, and the net proceeds from the sale of any Wells Fargo Equipment Collateral;

(b) Wells Fargo shall retain its lien on the Wells Fargo Equipment Collateral;

(c) Wells Fargo shall have a lien in the Post-Confirmation Cash Collateral of Reorganized SW Concrete in an amount not to exceed $477,357.00 and Reorganized AJ Concrete in an amount not to exceed $102,025.50, as such amount is paid down pursuant to the repayment provisions of the Plan, and the Reorganized Debtors may prime Wells Fargo's interest in the Post-Petition Cash Collateral in favor of a first priority Lien to the Post Petition Financing;

(d) The secured claim will be paid in full over the period of ten (10) years, with interest from the Effective Date at the rate of four percent (4%) per annum via amortized monthly Cash payments of principal and interest, with the first monthly payment commencing on the Initial Distribution Date and continuing on the same day of each month thereafter until paid in full;

(e) During the first three years of the payment period, the payments shall be allocated pro rata in that proportion to which, as of the Effective Date, (A) the amount of the Wells Fargo Secured Claim which is allocated to the Wells Fargo Equipment Collateral and (B) the amount of the Wells Fargo Secured Claim which is allocated to Wells Fargo's Lien in Post Confirmation Cash Collateral, and (C) bear to the total amount of the Secured Claim, so that Wells Fargo's Lien in Post Confirmation Cash Collateral will be satisfied in three (3) years;

(f) Upon satisfaction of Wells Fargo's Lien in Post-Confirmation Cash Collateral in full, Wells Fargo's Lien upon the Post-Confirmation Cash Collateral shall be deemed discharged;

(g) Upon payment in full, Wells Fargo's Lien upon the Wells Fargo Equipment Collateral shall be deemed discharged; and

(h) The Wells Fargo Loan Documents shall be deemed modified to be consistent with the provisions hereof but otherwise shall remain in full force and effect.

7. The Debtors' Plan proposes to treat Wells Fargo's Lease Claims as follows:

(a) The Lease claims shall be allowed in an amount equal to $660,000.00, less an amount equal to the portion of the Adequate Protection Payments and Stay Payments made by the Debtors and Reorganized Debtors to Wells Fargo as of the Effective Date applicable to the Wells Fargo Leased Equipment;

(b) While the BAP Appeal is pending, the Reorganized Debtors shall continue to make the Stay Order Payments to the extent they wish to keep the Wells Fargo Leased Equipment;

(c) If the decision entered in the BAP Appeal is in favor of the Debtors or Reorganized Debtors and is further appealed by Wells Fargo, the Reorganized Debtors shall commence payments on the then-outstanding balance of the Wells Fargo Lease Claim sufficient to amortize payment of the Wells Fargo Lease Claim over the same period as the Wells Fargo Secured Claim, or if the decision entered in the BAP appeal is in favor of Wells Fargo and is further appealed by the Reorganized Debtors, the Reorganized Debtors shall continue to make the Stay Order payments if Wells Fargo agrees to a stay pending appeal, or, such other amount as may be ordered by the court as a condition of a stay pending appeal should the Reorganized Debtors determine to request a stay;

(d) If the Final Order resolving the characterization of the Wells Fargo Lease Transactions determines that these transactions are secured financing, then (A) the amount of the Wells Fargo Lease Claim, less an amount equal to all the Stay Order Payments and the portion of the Adequate Protection Payments made by the Debtors or the Reorganized Debtors to Wells Fargo applicable to Wells Fargo Leased Equipment, shall be considered part of the Wells Fargo Secured Claim and shall be paid pursuant to the Plan provisions for such Claim and (B) the Wells Fargo Lease Equipment shall be Wells Fargo Equipment Collateral, and Debtors shall adjust payments on the Wells Fargo Secured Claim as necessary to achieve the amortization for the Class 3 Claim, the Wells Fargo Secured Claim;

(e) If the Final Order resolving the characterization of the Wells Fargo Lease Transactions determines that these transactions are not secured financing, then: (A) the Reorganized Debtors shall promptly turn over the Wells Fargo Leased Equipment to Wells Fargo, (B) as required by the Wells Fargo Lease Documents, Wells Fargo shall sell the Wells Fargo Leased Equipment, and (C) at the sale, the Reorganized Debtors shall be authorized to credit-bid an amount equal to all Stay Order Payments, plus the portion of all Adequate Protection Payments made by the Debtors or the Reorganized Debtors to Wells Fargo applicable to Wells Fargo Leased Equipment, plus any other payments applicable to the Wells Fargo Lease Transactions made during all appeals, plus the amount by which the purchase price exceeds 10% of Wells Fargo's cost of the Wells Fargo Leased Equipment; and (D) upon the sale of the Wells Fargo Leased Equipment in which Debtors are not the purchasers, Wells Fargo shall pay to Debtors the amount, if any, by which the sale price exceeds the sum of the cost of sale, plus 10% of Wells Fargo's cost of the Wells Fargo Leased Equipment, minus an amount equal to all Stay Order Payments plus the portion of all Adequate Protection Payments made by the Debtor or the

> Reorganized Debtors to Wells Fargo applicable to Wells Fargo Leased Equipment; and
>
> (f) The Wells Fargo Lease Documents shall be deemed modified to be consistent with the provisions hereof, but otherwise shall remain in full force and effect.

8. The Debtors' Plan proposes to treat the Wells Fargo unsecured claim as follows:

   > (a) Wells Fargo's unsecured claim shall be allowed in the amount of $3,443,921.56 and shall be paid in full over a period of ten (10) years with interest from the Effective Date at the rate of one percent (1%) per annum. Amortized Cash payments of principal and interest shall be made Pro Rata quarterly, commencing on the Initial Distribution Date and continuing on the same day of the first month in each quarter until the Allowed Claim is paid in full.

## II. THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION IN ACCORDANCE WITH SECTION 1125 (a)(1) OF THE BANKRUPTCY CODE

9. Section 1125 of the Bankruptcy Code defines adequate information as information that would enable a reasonable investor, typical of holders of claims in the relevant case, to make an informed judgment about the plan. This is information that is reasonably ascertainable in light of the nature and history of the debtor and the condition of the debtor's books and records. *In re Aspen Limousine Service, Inc.,* 193 B.R. 325 (D. Colo. 1996). Case law has given rise to many criteria that the courts use in evaluating the sufficiency or the adequacy of a disclosure statement. *In re Metrocraft Pub. Services, Inc.,* 13 B.R. 926, 930 (Bankr.D.Colo. 1981). Adequate information includes, among other things: (a) a clear estimation of the distribution to the various classes of creditors and an estimate of all administrative expenses to execute the proposed plan, (b) a liquidation analysis enabling each creditor to determine whether the distribution under the plan is in the creditor's best interest or whether the creditor should object to the plan, (c) a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor and the hypothetical reasonable investor, and (d) the history of the debtor in relation to matters that may impact a proposed plan of reorganization. *Id.* The "purpose of a disclosure statement is to inform equity holders and claimants, as fully as possible, about the probable financial results of acceptance or rejection of a particular plan. Moreover, since no plan proponent is expected to be able to predict the future with unerring accuracy, the information to be provided should be comprised of all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan.

*In re The Stanley Hotel, Inc.,* 13 B.R. 926 (Bankr. Colo. 1981); *see also In re: Werth,* 29 B.R. 220, 233 (Bankr. D. Colo. 1983).

10. A disclosure statement lacking adequate information sufficient to a hypothetical reasonable investor to make an informed decision regarding the merits of a plan cannot be approved. *Id.*

11. Wells Fargo objects to the Debtors' Disclosure Statement because it does not provide adequate information as required by 11 U.S.C. 1125 (a). *See Hall v Vance,* 887 F. 2d 1041 (10th Cir. 1989). The Debtors' Disclosure Statement is inadequate for the following reasons:

    (a)   The Debtors have not provided any feasibility analysis to support their proposed Plan. The feasibility of Debtors' plan, at least in part, depends on the Debtors projections of income and receipts based on past actual performance. The future projections, are not complete as they show cash into the Debtors but do not net out the plan payments to creditors and expenses to operate the company. The Debtor bears the burden to show feasibility by a preponderance of the evidence. *In re Danny Thomas Props. II Ltd. P'ship,* 241 F. 3d 959, 963 (8th Cir. 2001). Feasibility is the shorthand term for the requirement of confirmation as set forth in section 1129(a)(11) and it imposes a requirement that any plan must provide a realistic and workable framework for reorganization.

    (b)   The Disclosure Statement needs to further explain why proposed payments to secured and unsecured creditors under the plan and operating expenses of the Debtors are not included in the projections which are attached as Exhibit 8 of the Disclosure Statement, needs to further explain the basis for the projections increase in revenues and better explain why the equity holders should be allowed to earn profits while the creditors are put on a 10 year payment plan.

    (c)   The Disclosure Statement has inadequate information regarding how Central Concrete leases the trucks and concrete booms to its co-debtors, AJ Concrete and SW Concrete. Additional information should be provided as to the terms of the Central leases to AJ Concrete and SW Concrete. Copies of these leases should be provided as exhibits to the Disclosure Statement. Disclosure of how the lease payments are disbursed, including any amounts that are paid to the Wells Fargo guarantors or other insiders from said fees, should be disclosed.

    (d)   The Disclosure Statement has inadequate information regarding the 3% fee paid by the Debtors to their affiliate, SW Payroll, for the Debtors administrative and insurance costs. Disclosure of the amount of these costs and how these fees are disbursed, including but not limited to the fees that are disbursed to the Wells Fargo guarantors or other insiders, should be made. Disclosure should also be made as to

any fees, draws or disbursements made from SW Payroll to the guarantors or other insiders.

(e) The Disclosure Statement has inadequate information as to the rent that is paid to SWCP, an affiliate of debtors, for the rent of the two plant sites in Englewood and Johnstown, Colorado. Records provided to Wells Fargo suggest that approximately $4,000.00 in rental revenue per month is collected over and above the monthly mortgage payments on the real properties. The terms of such leases should be disclosed, and disclosure of how the rent is disbursed, including but not limited to how any portion of the rent payments are disbursed to the Wells Fargo guarantors or other insiders, should be made. SWCP, LLC's increase in equity in the real properties due to payment of the monthly mortgage payments should also be discussed, as records suggest the equity increases approximately $100,000.00 per year. The payments to SWCP should be classified as claims under the plan.

(f) The Disclosure Statement has inadequate information concerning the ten (10) trucks that are discussed on page 11 of the Disclosure Statement that SW Concrete and AJ Concrete, co-debtors, acquired from Central Concrete. Neither the description of those trucks, nor any payment or other consideration that might have been paid to Central, nor was the source of such funds disclosed.

(g) The Disclosure Statement does not disclose how fuel, repair and maintenance costs increase with increased sales. An explanation of whether fuel, repair and maintenance costs increase uniformly across the board, or whether particular trucks require greater fuel, greater repair and greater maintenance costs in pro portion to other vehicles should be disclosed. The particular trucks and their respective costs of repair maintenance and fuel, should be identified.

(h) The Disclosure Statement mentions that there are "sole source suppliers" but does not disclose the identity of Debtors "sole source suppliers", nor are any concessions that have or will be made to such sole source suppliers towards consent to the debtors' plan, disclosed, nor is adequate information provided that explains why such supplier is in fact a sole source supplier.

(i) The Disclosure Statement does not disclose the source of the $50,000.00 that will be used to purchase an equity interest in Debtors' new entity, Andersen New Co. Whether the funds will be provided by the Debtors, any existing Wells Fargo guarantors or any other insider of the Debtors, has not been disclosed.

(j) The Debtors should provide information substantiating the apportionment of the value and or an appraisal of Wells Fargo's secured and or unsecured claims that can reasonably be relied upon since the Debtors intend, in part, to fund their operations with cash flow from Wells Fargo's collateral.

(k) The Debtors need to provide adequate information that satisfactorily explains why Adequate protection payments should be deducted from the amount of the allowed Wells Fargo Secured claim.

(l) The Debtors need to provide adequate information that satisfactorily explains why Wells Fargo's post confirmation lien regarding SW Concrete will be in the amount of $477,357.00 and the post confirmation lien of Wells Fargo will be in the amount of $102,025.50 as to AJ Concrete II.

(m) The Debtors should provide additional, adequate information explaining why Wells Fargo's lien on the post petition assets should be released after three years of plan payments to Wells Fargo instead of the ten years of payments the Debtors will be paying to Wells Fargo on its secured claim.

(n) The Disclosure Statement does not disclose nor does it provide adequate information that justifies a ten year payment period for Debtors' payment of secured claims and an interest rate of 4% over the course of those ten years. Adequate information must be provided that justifies the ten year payment period for Debtors and adequate information must be provided that justifies why a fixed interest rate of 4% per annum is appropriate over those ten years. Over the next ten years, interest rates will likely increase. Adequate information must be provided that explains why the interest rate should remain a fixed rate over that ten year repayment period, instead of an adjustable rate.

(o) The Disclosure Statement does not contain adequate information nor does it adequately disclose why the Debtors should be allowed a credit bid in the amount of any stay order payments made to Wells Fargo, or the amount of adequate protection payments or any other payments made by the Debtors to Wells Fargo during the course of the appeal at any sale of leased Wells Fargo equipment should it be determined on appeal that the Wells Fargo Leases are leases. Adequate information should be provided as to why these credits should be allowed since the debtors possessed and used the trucks during the pendency of the Debtors' bankruptcy and since the Wells Fargo Leases were expired rejected and were otherwise in default without payment of amounts due upon default as required by the leases and security agreements. The plan establishes the secured portion of Wells Fargo's claim and to allow debtors these credits is a further reduction to the value of the collateral to Wells Fargo under the plan. The Debtors have already received credit against the amounts due and owing for stay payments and adequate protection payments made by the Debtors and to allow the Debtors to use the same payments towards a credit bid is a double benefit for one payment.

(p)     The Disclosure Statement does not contain adequate information nor does it adequately disclose why the Debtors should be allowed a credit bid in the amount by which any sale or purchase price of the Wells Fargo leased vehicles exceeds 10% of the Wells Fargo cost of the Wells Fargo leased equipment, since the Wells Fargo Leases have been rejected, expired and are otherwise in default without payment of amounts due upon default as required by the leases and security agreements.  The TRAC provisions of the leases do not apply since the leases are in default.

(q)     The Disclosure Statement does not contain adequate information nor does it adequately disclose why the Debtors, if they are not the purchasers at sale, should be paid the amount, if any, by which the sales price of the Wells Fargo leased equipment exceeds the sum of the costs of the sale, plus 10% of Wells Fargo Cost of the Wells Fargo Leased Equipment, minus an amount equal to all Stay Order payment plus the portion of all Adequate Protection payments since the Wells Fargo Leases have been rejected, expired and are otherwise in default without payment of amounts due upon default as required by the leases and security agreements. The TRAC provisions of the lease were terminated upon default and of the leases and Debtors have received credit for adequate protection and stay payments against the amounts due and owing on the secured claim, the amount of which is established by the Plan.

(r)     The Disclosure Statement does not adequately explain why the TRAC provisions of the Wells Fargo leases should apply upon sale of the equipment since the leases are in default, the payments required upon default have not been made and the leases have otherwise been rejected.

(s)      The Disclosure Statement does not adequately explain why the Wells Fargo unsecured claim will be paid over the course of ten (10) years and why interest should be at a fixed rate of 1% per annum.

(t)     The Disclosure Statement does not provide adequate information as to the identity of the subordinate claims, what the claims consist of and how they will be treated under the plan.

(u)     The $50,000 equity buy in is not adequately explained.  Disclosure as to the source of those funds, should be made and whether it is paid by an affiliated company or person of the Debtors.  Adequate material must be provided to explain how, this $50,000.00 buy in, changes the ownership of the Debtor, its management, or its equity holders.

(v)     Sufficient disclosure concerning the assignment and assumption of the benefits plans is not provided.  What do these benefit plans consist of, who are the beneficiaries, what are their terms.  What type of plans are they?  Are the

beneficiaries totally vested? If these benefit plans concern health care coverage, disclosure should be made if anticipated compliance with any upcoming changes in the law, such as compliance with Obamacare, will impact the projections and or need for the Payroll Company that currently handles these expenses, although funded by the Debtors.

(w)     The Disclosure Statement does not provide adequate information on the potential federal tax consequences for the plan, the Debtor, a creditor accepting or rejecting the plan or the Reorganized Debtor.

(x)     The Disclosure Statement does not set forth sufficient information concerning the other litigation that the Debtor claims it has with Wells Fargo. The basis for claims concerning Wells Fargo's interest in Brundage Bone is not adequate for an investor to make an informed decision. Nor are the debtors' statements that the Revolving Loan was tied to an adjustable interest rate based on Libor. The Disclosure Statement does not adequately set forth information as to what these claims or offsets are based on, how it impacts the plan and the likelihood and probability of success on such litigation and the projected costs and expenses were this antitrust and disclosure litigation filed and pursued..

(y)     The nature of statements that Wells Fargo coordinates and undermines competition in the concrete pumping industry in Colorado through its interest in Brundage Bone is not sufficiently provided, in as much as the identity of the source, substance and time frame of said information, has not been provided and the projected costs and expenses have not been provided.

(z)     The Disclosure Statement does not address Wells Fargo's claim for an administrative expense for Debtors use of the Leased vehicles from the date of the filing of the bankruptcy petition until the date of the stay hearing pending appeal, without payment.

(aa)    The Disclosure Statement does not adequately advise of the roles that the guarantors will have in the new company and suggests that Mr. Rosendale might no longer be involved in the reorganized debtor. This information should be supplied.

(bb)    The Disclosure Statement does not adequately explain how it arrives at the values it uses for liquidation values of the Wells Fargo collateral. No reference is made to an appraisal of the equipment for purposes of valuation.

(cc)    The Disclosure Statement does not adequately explain why the Wells Fargo Adequate protection payments are to be deducted from the allowed claim since such payments are to compensate the creditor for the debtors' use of the equipment prior

to confirmation of the plan, while preserving Wells Fargo's value and equity in the property.

(dd) The Disclosure Statement does not explain why the proceeds from sale of collateral should not first be applied to accrued interest before it is applied to the allowed secured claim.

(ee) The Disclosure Statement does not adequately explain the Debtors relationship to SW Payroll and SWCP, who are insider entities, and payments to SW Payroll and SWCP should be subordinated to payments to creditors under the plan.

(ff) The Disclosure Statement does not provide information and estimates of the amount of legal and other administrative costs to create the new reorganized debtor and how those costs will be funded.

(gg) The Disclosure Statement information does not adequately address the current and future compensation structure of the managers and equity holders of the debtor pre-confirmation and the reorganized debtors post confirmation.

(hh) The Debtors' plan does not adequately discuss the guarantors' personal exposure to the secured creditors.

(ii) The Debtors Plan does not treat the unsecured creditors in a fair and equitable manner.

### III. THE DEBTORS DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE DEBTOR'S PLAN IS NOT CONFIRMABLE

12. The Debtors have not provided any feasibility analysis to support its proposed Plan. The feasibility of Debtor's plan depends on revenues from operations. The Debtors bear the burden to show feasibility by a preponderance of the evidence. *In re Danny Thomas Props. II Ltd. P'Ship,* 241 F. 3d 959, 964 (8th Cir. 2001) Feasibility is the shorthand term for the requirement of confirmation as set forth in section 1129(a)(11) and it imposes a requirement that any plan must provide a realistic and workable framework for reorganization.

13. The leading Tenth Circuit case addressing feasibility is *In re Pikes Peak Water Company,* 779 F. 2d 1456 (1oth Cir. 1985). It describes the purpose of the feasibility requirement as preventing the "confirmation of visionary schemes" which promises to "creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Id.* at 1460 (quoting *In re Pizza of Hawaii, Inc.,* 761 F. 2d 1374, 1382 (9th Cir. 1985)), See *7 Collier on Bankruptcy,* Para. 1129.02(11) (16th ed. 2009).

14. When determining whether a plan is feasible, a bankruptcy court must carefully scrutinize the plan to determine whether it offers a reasonable prospect of success and is workable. *In re Pikes Peak* at 1460. "Feasibility determinations must be 'firmly rooted in predictions based on objective fact.' " *In re Danny Thomas Props.,* 241 F. 3d at 964 (quoting *In re Clarkson,* 767 F. 2d 417, 420 (8th Cir. 1985)). Courts also consider a debtor's cash flow projections showing its ability to simultaneously make plan payments and fund projected operations. *In re Trevarrow Lanes, Inc.,* 183B.R. 475, 482 (Bankr. E. D. Mich. 1995). The projections must be based upon evidence of financial progress and must not be speculative, conjectural, or unrealistic. *Id.* A debtor must still sustain its burden to somehow prove that it will be able to perform all obligations it is assuming under the plan. *Id.* at 483 n.7. A glaring deficiency between the facts surrounding past performance and activity and predictions for the future is strong evidence that a debtor's projections are flawed and the plan is not feasible. *Id.* at 482.

15. The bankruptcy court must find that the plan offers "a reasonable probability of success." *In re Landing Assoc., Ltd.,* 157 B.R. 791, 820 (Bankr. W.D. Tex. 1993). *Matter of T-H New Orleans Ltd. Partnership,* 116 F. 3d 790, 801 (5th Cir. 1997); *see In re Continental Airlines,* 91 F. 3d 553, 563, (3d Cir. 1996). Feasibility contemplates "the probability of actual performance of the provisions of the plan. Sincerity, honesty and willingness are not sufficient to make the plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Hoffman,* 52 B.R. 212, 215 (Bankr. D.N.D. 1985) (quoting *Matter of Bergman,* 585 F. 2d 1171 (2d Cir. 1978)); *see also In re Walker,* 165 B.R. 994, 1004 (E. D. Va. 1994).

16. Further, in order for the Court to find that a disclosure statement is adequate, the disclosure statement must be accompanied by a confirmable plan. A disclosure statement cannot be approved when it is accompanied by a defective plan. *See In re Century Investment Fund VIII Limited Partnership,* 114 B.R. 1003, 1005 (Bankr. E.D. Wis. 1990) ("If a plan is on its face nonconfirmable as a matter of law, then it is appropriate for the court not to approve the disclosure statement.") *In re Spanish Lake Associates,* 92 B.R. 875, 877 (Bankr. E.D. Mo. 1988) ("If the court can determine from a reading of the plan that it does not comply with section 1129 of the Bankruptcy Code, then it is incumbent upon the Court to decline approval of the disclosure statement.")

17. As the Debtors' Plan is unconfirmable on its face, the Debtors' Disclosure Statement cannot be approved.

18. Wells Fargo expressly reserves all rights to object to the Debtors' Disclosure Statement and any amendment thereof, should any additional information be learned by the objecting party through the course of this proceeding and/or any related proceeding.

WHEREFORE, for all of the foregoing reasons, Wells Fargo Equipment Finance, Inc., respectfully requests that this Court rule that the Disclosure Statement fails to provide adequate information as required under Section 1125(a) (1) and for such other and further relief as deems just and proper.

DATED this 14th day of November, 2012.

Respectfully submitted,

BROWN, BERARDINI & DUNNING, P.C.

*s/ Neal K. Dunning*
Neal K. Dunning, Reg. No. 10181
Douglas W. Brown, Reg. No. 10429
2000 S. Colorado Blvd, Tower Two, Ste.700
Denver, CO 80222
Telephone: 303-329-3363
Email: ndunning@bbdfirm.com,
Attorneys for Wells Fargo Equipment Finance, Inc.

## CERTIFICATE OF SERVICE

      I hereby certify that on the 14\ :sup:`TH` day of November, 2012, I have served a true and accurate copy of the foregoing **WELLS FARGO EQUIPMENT FINANCE, INC.'S OBJECTION TO THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT** BY placing same in a depository of the U.S. Mail, postage prepaid and addressed as follows:

**Central Concrete Pumping, Inc.**
2323 West Oxford Avenue
Englewood, CO 80110

**Andrew D. Johnson**
1873 S. Bellaire St.
Ste. 1401
Denver, CO 80222

**Christian C. Onsager**
1873 S. Bellaire St.
Ste. 1401
Denver, CO 80222

**Michael J. Guyerson**
1873 S. Bellaire St.
Ste. 1401
Denver, CO 80222

**Erich L. Bethke**
Senn Visciano Canges P.C.
1801 California Street, #4300
Denver CO 80202

**US Trustee**
999 18th St.
Ste. 1551
Denver, CO 80202

**Paul Moss**
999-18th St.
Ste. 1551
Denver, CO 80202

      *s/ Patricia Peak*
      Patricia Peak